Good morning. May it please the Court. Patrick O'Neill on behalf of the Appellants Council. It's nice to be here in St. Paul where I've practiced law all my life. Today I'm going to cover, we had five issues in our brief. I'm going to cover the first issue on the final accounting in issues four and five. We've elected to stand down or abandon issues two and three. On issue one, you know, why are we here? Why are we here today on issue one is about the final accounting. And I want to go back in time a little bit. In 2008, there was a receiver appointed and it was, as you may know, you served defendants with a receivership action. And then the judge also, Judge Montgomery also said she's the receiver of any entity 100 percent owned or controlled by Mr. Petters. That order did not list all the entities 100 percent owned or controlled by Mr. Petters in 2000. It had a chart. Pardon? It had a chart, a diagram. Well, it has an unsworn chart that we were provided with very late. But it's an unsworn chart and unfortunately, Judge, it's not in the record. But the order never lists every entity. And so we asked what entities are in the receivership. At one point, the judge mentioned there were 60 entities. Then we got the org chart of 150 and then we got the final account at 31. And so we're sitting here going, okay, well, can't you ask, can't you answer a simple question? How many entities were in the receivership that were 100 percent owned or controlled by Mr. Petters? We think it's a basic question that should be answered or that we could deduce in the final accounting. Now, why wasn't that put in there is they, I don't think they have a very good explanation, to be honest with you. They say that we didn't need to put it in there because there's no case law that requires it. Okay. Well, with all due respect, I don't think that this Court wants a case that says a receiver doesn't need to list every entity in the receivership. If you're going to have an equity receiver control all the assets, have an anti-litigation stay, and then approve settlements and have borrow orders, then we should have a listing of all the entities. And so — And what's the practical effect of that? What would you do with this list if you had it? That's fair. Why do you need the information? That's fair, Your Honor. The — Well, I'm — The — we need it now because we have a — I'm just trying to understand — Pardon? I'm just trying to understand how this would play out. Yeah. No, it's a fair — it's a fair — absolutely fair question. Why do you need it or what would you do with it? After the litigation stay was lifted, 11 years — okay, my client was one of the last investors in the Ponzi, which has been painful to wait, 11 years. But after 11 years, we got the stay lifted, and we have state court judgment in Minnesota and a state court judgment in Illinois. We filed a citation lien, and we're seeking to understand what entities were 100 percent owned or controlled by Mr. Petters. We have supplemental proceedings. We have a right to a turnover order. We have a right to pursue third parties. But we're precluded. We shouldn't have to — we shouldn't have guesswork. And so — Is the answer that if you had this list, it would give you potential defendants in separate litigation? Yes. Our state court — Is that what you're looking for? Yeah. Our state court supplemental proceedings. And — How is that related to the — whether the receivership was properly built? Well, because if you have a stay for 11 years of entities 100 percent owned or controlled, you should list those. And if you're going to be paid $7 million and have an accountant paid $14 million, what it doesn't have, Judge, is what was abandoned. And so a lot of times what we've seen is you have a beginning inventory, share certificates, assets. Some of them were recovered, but some of them were abandoned. We don't know why — if there's a hundred — if there's only 31, and there's some over in bankruptcy, what happened to the others? And so we believe we have a stake in the outcome, and we want to know in a final account. And it should be listed of — at basic is what were the entities in the receivership that you had control over that we were prevented? What does the Ritchie special credit investment decision do to those claims that you want to pursue? There are several, Ritchie. Are you talking about Judge Strauss in September? Yes, Judge Strauss was recent. Yeah, that's fair. The — first of all, that's one of the reasons we've abandoned Issues 2 and 3. In Issue 2 and 3 are, should the settlement with JPN been approved? Did they have standing? It should have been approved. I do — we — you know, I've talked to my client, and we've decided that the receiver did have standing, and that she did have the buttle on — we didn't get any part of the $2.5 million. But I would submit that the Justice Strauss decision in September of 2022 has no effect on Issue Number 1 on the final accounting, none. That was whether or not we had standing, and we could sue J.P. Morgan. My client's bank was also J.P. Morgan's. Well, counsel, two or three quick questions. Sure. Can you tell who the defendants are by looking at all these docket entries over time and all the orders over time? I would submit no. Can you do the work and figure it out? No. I would submit no. I mean, you know, Judge Montgomery does say, well, this is all a rehash of what's already been done. Right. But I did pull the chart they gave me from the paralegal, and you can't tell. I'm not talking about the chart. I'm talking about docket entries and what they link to. You know how the modern digital systems work. Right. But there's not a docket entry for every entity 100 percent owned or controlled by Mr. Petters. Now, there is a docket entry if they sold an asset and got a recovery. Right. But there's not a docket entry of, well, why didn't you pursue this one? Maybe Mr. Kelly had a reason that it was too burdensome not to pursue that asset. But that doesn't mean that there wasn't an asset. And so their explanation that we just listed the assets taken into the receivership, which you'll hear from Mr. Ledone, is we listed the assets taken into the receivership. And I, you know, we submit that the assets should have been the beginning inventory, and then if they aren't pursued, then you tell us entity by entity. We cited one case where the judge's order listed all 29 receivership entities. And so, again, we just don't understand. How many receivership entities were there in this case? Well, Your Honor, that's one of the reasons we're here. There's a chart prepared by a paralegal in 2008 that lists 150 entities. Some of those entities went over to bankruptcy. And if you look at the transcript, what Mr. Ledone says, well, Pat, if you just take the 150 and subtract out the bankruptcy ones, then you've got your receivership entities on an unsworn, not-in-the-record chart. And I submit on a 14-year receivership that this court should require more, and a listing, and not just, here they are on an unsworn chart. And so I got it on last night. Yeah. Go ahead. Sorry. Somebody else talking? How many of these can you get from the records that are going to be available to you after the receivership? Unknown. I don't know, you know, did he save the shared certificate he didn't abandon? I mean, that would be a, you know, Your Honor, I think if he shows a receivership entity, share register, share certificate, didn't pursue, abandoned, then I could say, okay, we want to see that entity. Why was it abandoned? I have a judgment now. I waited 11 years to do no discovery. And, but the document retention is a good, another good segue here for me is if you remand, which I'm requesting you remand for the listing of the name, the taxpayer ID, the state of incorporation, what was their asset at the beginning, what was their asset at the end, that the record retention then be, we'll be allowed to access those newly listed entities. And so the, there are, there is pending litigation. They are clearly giving you access after the receivership's done to those records, right? They will. We have to pay for it. Right. And we do, you know, take exception to 11 years of waiting and then they engaged in all the discovery and now we've got to go to them. They can decide what we get. We have to pay them. But at least on the pending litigation, objection is, was solved, if you will. BMO Harris case tried in front of Mimi Wright, you're probably aware of that verdict. A lot of these documents have been saved. We have a state case with Judge Montgomery that's a pending litigation. But as far as these documents on the abandoned assets of entities that are not listed, I don't, I don't know where they are or if they're saved, but we would like to see them with our, as a judgment creditor. Now, you've kind of skipped or you have skipped over this question of the stipulation. You know, the appellees say you're barred from pursuing this appeal because of the stipulation that was a deal that the stay was lifted on the understanding that you wouldn't take any further action. Right. And I, you want to say anything about that or you want to just rest on your reply brief? Well, I think we do say in the reply brief, but we, we agreed not to take any action in the receivership and we didn't. We're not seeking any assets of the receivership through our actions. We stipulated the receivership being terminated and they ended it. But that stipulation doesn't say anything about not objecting to the final accounting after it's over. She ended the, Judge Montgomery ended it in January and then there was a final account and then we appealed. So the stipulation I would say is we've, we've complied with it. We did get a lift from the stay and we had to sue Mr. Petters in 2014. It was then stayed. We got the lift in 2019 and then we got the judgment. But we submit that our appeal is timely and was not covered by that. And this is not a appeal or it's nothing in the receivership. It's after it's over on the final accounting. And that's what I think we say in our reply brief. So back to the case law is, you know, is there a case that says they have to list every entity in the receivership? And, you know, there's no case that we can find that you don't. And we just think it's basic that you should have to disclose in the final accounting every entity. The cases that we did cite, one was a 1900 case, but it, you know, by, by Judge Sanborn, Walter Sanborn, and, and, you know, it does not talk about listing every entity. I do see I am, my 12 minutes are up and I was going to reserve three for rebuttal. Thank you. All right. Thank you, Mr. O'Neill. Mr. Ledone. May it please the Court, Counsel, I'm James Ledone. I represent the receiver, Douglas Kelly, in this appeal, and I've represented him since the get-go in October of 2008 when this receivership commenced. I'll highlight a few pertinent facts, but I also recognize that each of you have been on at least two panels of Petters Matters previously, so you have a fairly good sense of the background in this case. But before I proceed with my prepared comments, I want to make three quick points in follow-up to Mr. O'Neill's comments. First of all, what he didn't tell you is that the only claim that his client has against the individuals or the entities in the receivership is against Mr. Petters. All these other entities that he talks about, he does not have a claim against those entities. Who are his judgments against, Counsel? His judgment is against Tom Petters. Only Petters? Only Tom Petters. He got relief from State so that he could get a judgment against Petters. Of course, he may be able to pursue assets that help other people that were Petters, right? Petters. But they've all been administered. The trustee hasn't abandoned any assets. He's administered all the assets in all these cases. Petters may have something in his cell that we're not aware of, but that's it. That's been exhausted. Secondly, he filed his notice of appeal in the receivership at a clear violation of the agreement. Doug Kelly, as you know, was appointed. Counsel seems to try to make the point that even though he was bound by the stipulation, he is entitled to challenge the final accounting. Your Honor, read the stipulation. That's not what it says. It says he will not take any action in the receivership. To suggest that the receivership is not a receivership anymore, come on. That's too cute by half. That's not what's intended and that's not what the agreement says. Actually, it doesn't say in the receivership. It says against motions against the receivership. Yes, but then the rest Or make any additional requests, comma, or otherwise take any other action in the receivership. Right. And I submit that filing the notice of appeal is taking an action in the was also taking an action in the receivership. And Judge Montgomery noticed that and noted that as well. You didn't object at that point. We didn't object at that point, no. What was your thinking there? Our thinking actually was that this has been going on for a long, long time. That agreement was entered into about three years earlier. And as we were trying to wind up the receivership, we were just trying to accommodate Richie and we were working back and forth with them. We were trying to put together a procedure for saving the documents so that they're protected in case somebody wants them. And I just failed to bring it up at that point in time. But the judge noted it. And clearly that was in the record that had been filed and approved in the same receivership that the motion to wind up the receivership was filed in. So you think you can enforce the stipulation on appeal even though you didn't try to enforce it in the accounting procedure? Yes, Your Honor. And I think this Court, although this issue was just really raised in the reply brief of Richie, this Court in the White's Company v. Lloyd's of London case at 575 F. 3rd, 885, makes clear that the Court has a discretion to consider these types of arguments on appeal if the issue is beyond any doubt or because it is purely a legal issue. I think it's purely a legal issue. We've got an agreement. The agreement speaks for itself. And secondly, Judge Montgomery, in relying upon it, even though she didn't use the word judicial estoppel, she did rely upon it. She's entitled to bring up the judicial estoppel doctrine. What did she say about it? In her order granting the motion to terminate the receivership and approve the final report and all, she noted in there that Richie had said that they would not continue to basically object or contest in the receivership. She's got language in her order. What I mean, did she rely on that as a basis for the decision? Yes. That's one of the items she relied on, and I can You mean she said, I'm rejecting Richie's objections because of the stipulation? I don't remember her saying that. But anyway, we can read it. Go ahead with the rest of your You don't have to look that up. We can look that up. Unless you have it very handy. I've got the order, too. Pardon me? Unless you have it very handy. Speaking for myself. I think I've had I also have it in front of me. Okay. Well, it's in the record. Okay. She recites that language both in her order approving the underlying stipulation back in 2019 and in her order approving the motion to terminate the receivership from which we are appealing here. Just by way of some background, as the Court knows, Richie has been contesting these proceedings for an extended period of time since the very beginning. Richie's unique in a couple of ways. They tried to get their own receivership going in Cook County, Illinois, in the beginning and objected to this receivership. They tried to get their man, Billy Perseda, appointed the receiver in Cook County and also then tried to get him appointed in Minnesota. Richie's unique because there's some of the last money to the table. $146 million came in in June or excuse me, in February of 2008 at 80% interest. And then another $43 million came in thereafter between 67% and 362.1% interest. When these defaulted in September, Richie panicked. They're pushing on the company and they do a collateral grab and get the assets of Polaroid. Polaroid was not a party to any of their transactions. That collateral grab and security interest granted from Polaroid was later set aside as a fraudulent transfer by the Bankruptcy Court, ultimately affirmed by this Court. And then Richie, ultimately, after a number of years, they did agree to their allowed claim in the bankruptcy case. They received an allowed claim of $163 million in the bankruptcy case. As a result of that allowed claim, Richie's received distributions on a pro-rata basis out of the bankruptcy estate, just like all the other creditors have. And that's for some of the... At what percent was it, counsel? Well, at the time we had briefed this, that number was about 17%. But there's significant upside with some other matters presently going on right now. Richie, so they received their distribution and a lot of the J.P. Morgan settlement dollars went into that bankruptcy case, so they got their piece out of that. And now they argue that they aren't receiving their... They didn't receive any of the receivers' J.P. Morgan settlement dollars. Well, there's $2.5 million pursuant to the coordination agreement that had to go to the government by forfeiture, and that was distributed pursuant to the remission process. Why they aren't participating in the remission process, perhaps they can answer to this Court, but all the victims are entitled to... You know, the good-faith victims are entitled to participate in the federal government's remission process. So, you know, if they got a claim in that process, they ought to have received a portion of that as well. What about the list of entities? That's the main thing you argued. You've been 10 minutes, you haven't mentioned it. Well, two things to that. First of all, all the other entities they don't have a claim at, so why does it matter to them? Secondly, you know, he says he wants to pursue them... Here's the chart that we got from Pitters. A lot of these entities were empty shells. There's nothing there. There's about 31 entities that we got assets out of that were live entities, and then there are another 22 that went into the bankruptcy proceedings. So that's about 53 or 54 entities. The rest of these are shell entities that really aren't being used. Pitters was creating entities, getting rid of entities, all of that as part of his Ponzi scheme. Why isn't there a list in the record of the entities that are covered in the receivership? We just continue to rely upon the court's order, entities 100% owned or controlled by Pitters. Nobody besides Ritchie has really ever even pressed that particular issue. We've just managed the receivership. And this chart that you flashed up there, is that in the record? That was provided by Ritchie as part of their request at the end to get more information. I don't... I think it's perhaps in... I don't know if it's in the record or not, but the fact that we provided it to them is in the record. That's in the... I think that's in the judge's... in one of the hearing's statements. Well, without the list, how can... What's the assurance that there really isn't something out there that might be able to be found by Ritchie to seek some recovery? Well, the receiver has pursued all of these... all of these assets, and the receiver has liquidated them. The only entity, the only person that Ritchie has any concern about is Tom Petters. Ritchie knows Tom Petters is in the receivership. Ritchie's interest in all these other entities that he doesn't even have a claim against, you know, that's kind of the proverbial red herring, if you will. Why are they even concerned about that other than just trying to make some noise? Counsel, let me ask you a simple question that I... you've been through bankruptcy court. Is there some place, a list, like a balance sheet sort of basic list of everything that you began with and some sort of balance sheet with everything you ended with? In the bankruptcy court? No, I'm just saying since you went through bankruptcy court, you had to prepare stuff like that. But is there one for the receivership? Well, there's the summary, which is what Judge Montgomery wanted. I'm sorry, you know what a balance sheet is, I bet. Yeah, yeah, yeah. Is there something that looks kind of like a balance sheet? We've got all the background information. Counsel, I'm asking very simple, basic questions. Is there something like a balance sheet that shows what you started with and what you ended with? You know, in terms of assets, liabilities, da-da-da-da-da-da. Not liabilities because of liabilities. No, no, I get it. Yeah. And I take it that you had no accounting function. Did you have a CPA employed with the receivership? Yes, yes, yes. All of this had been prepared by a CPA. Mr. Kelly has had a CPA working with him doing the accounting part of this, all the backup, all the documents. Is that anywhere in the record, any of that accounting stuff? She's been recognized by the court... Counsel, counsel, my questions are simple. Is any of that accounting stuff in the record? All the journal entries and all the background entries, every single entry, no. Okay. Or even a fancy balance sheet, a simple balance sheet. I didn't mean to say fancy. I meant to say the opposite. Even an accounting first semester balance sheet showing what you started with and what you ended with is not in the record for the receivership. That's not in the record. What's in the record regarding the numbers is all the settlements and the final report that the receiver filed, which is the summary of these things. All the background information is in, you know, background reports... So you don't list the entities in a lawyerly way. You don't do any accounting in an accounting way. How can it be called an accounting? Well, I think it's called, you know, the final report. Counsel, it's called accounting in the law. I don't mean to quarrel with you over nothing. But how can it be accounting if you don't have basic financial information? Well, it shows the summary of all of the collections. It shows the summary of the expenses and all of that's available in the background papers that are kept by the accountant. We just didn't provide all of those to the... I'm not talking about all, Counsel. I came to you back to some just basics. You know, two or three basics. As I say, first few weeks of accounting stuff. I guess I'd submit that the basics is what's contained in the report that's been filed with the court. I think that's the basics. And that's what Judge Montgomery wanted. And that's what's been provided to her. Briefly, I want to hit a couple of the mootness issues. First of all, I submit that issues 2, 3, plus 4, and 5 are all mooted by the J.P. Morgan dismissal. So then we're left with issue 1, dealing with the accounting. First off, as I said, I don't think there's a... or as we said in our brief, we don't believe there's a case in controversy here because of the agreement that Ritchie would not continue to basically file or engage in the receivership. Secondly, we think their argument of coming in now and trying to do that is mooted because of that particular agreement. And then third, I just emphasize the discretion that the district court judge has in this case. Judge Montgomery, in her final statement on the record and in the order, speaks to all the efforts that she has taken throughout the course of this proceeding. She's had 120 hearings. She's approved all expenses, all fee applications, all sales. She emphasizes how she has attempted to run a very transparent process in this case, and as she said at the end, now after 120 public hearings and nearly 3,300 docket entries, the work of the receiver has concluded. We submit that that ought to be the case, and we ask that this court affirm Judge Montgomery's well-reasoned decision and ruling because she has not abused her discretion in approving the receivership report. Thank you. Thank you, Mr. Ledone. Mr. O'Neill, your rebuttal. Thank you. I am going to hit Issues 4 and 5, just a couple brief comments on that. Mr. Petters is not in bankruptcy, and never was, which is interesting because I think it was intentional by Mr. Ledone and their group not to put him into bankruptcy, so none of these judgments have been discharged, and obviously what he was owned 100% or controlled by him at the time the receivership started is relevant to looking into that, and so... So your answer to his argument that you're only interested in Petters personally is that you think you can get to these other entities if they were owned by Petters? Is that the argument? Right, or a shared certificate. Pardon me? If there's a shared certificate or a shared register or a third party. We have turnover orders. I mean, we just... How do you advise your client, I guess, when we're in the dark? But spell out how... Let's say you found out the name of some entity on that chart, and you have a judgment against Petters. What are you going to do with the entity on the chart? Well, we would look and see, did he have a shared certificate? Petters? Petters had a shared certificate. So if he 100% owned it, is there a shared certificate? Where is it? Supplemental proceedings in Illinois, a citation and a lien and turnover. There's all these options you can have, but we're trying to chase it down. We're trying to get the information. I want to hit issues 4 and 5 real quick if I could. Okay, so what I've learned, and I have learned in this case, is that you have a receivership, you have an anti-litigation stay. Then you can have settlements that are approved and a bar order. Okay? So we had some difficulty with the stay and the bar order because usually you don't get your claims barred. But here, I understand. Zacharias' case, I think, is instructive. But what Zacharias says is, we are going to bar your claim. We're going to have these settlements are important, and we're going to bar your claim as long as the investor or the objector is allowed to participate in the distribution process. And here, there was no claims process in the receivership. So we have no entities fully listed and we have no claims process. And so after the $2 million came in, we learned after the fact that it all went over to the criminal remission. We never received a penny of the $2.5 million. And so our complaint is that that's a violation of due process and not just compensation. Our claim against J.P. Morgan was taken away through the bar order so we at least should be able to participate. And Head Note 17 in Zacharias talks about that. And the judge says... What was your property interest? Pardon? For a due process claim. Is the claim against J.P. Morgan that was barred. So we had a barred claim against J.P. Morgan that was taken from us. And what Zacharias says, we're going to take that claim away from you as long as you provide a due process to participate in the distribution. And in that case, they did have a receiver claim process. It wasn't your participation in the settlement your opportunity to to seek that relief? We objected to the settlement as too low, which I agree was due process. We objected to the bar order as not defining derivative, which I agree is due process. But then, when you don't get any of the remission, we don't get any of the money, and it goes over to the remission fund and we have a claim that's denied over there, that's where we believe it's a violation of the due process on the distribution. And that's why Issue 4 is not covered by Justice Strauss. And it's part of the final accounting. And it's unfortunate that we didn't participate, but I think a remand should be had for the court to consider we never got any of the money if you're going to bar a claim. I see I'm out of time. Thank you. Thank you, Mr. O'Neill.